UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAY WALLER,

            Plaintiff,                  Case No. 1:22-cv-958

v.                                        Honorable Jane M. Beckering

MICHAEL BURGESS et al.,

            Defendants.
_____/

**OPINION**

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis* (ECF No. 5). Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Bissle and Mulberg. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's Eighth Amendment claims against Defendants Parish, Burgess, and Clouse; and Plaintiff's Fourteenth Amendment substantive due process claims against Defendants

Parish, Burgess, Clouse, and Unknown Party #1. Further, the Court will deny Plaintiff's motion for appointment of counsel.

## Discussion

**I.   Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following ECF officials: Warden Michael Burgess; Former Warden Thomas Parish; Deputy Warden Jeffery Clouse; and Correctional Officers Peter Bissle, Gabriel Mulberg, and Unknown Party #1, named as John Doe. (Compl., ECF No. 1, PageID.2–3.)

In Plaintiff's complaint, he states that on December 13, 2019, he "was cleared to work as a prisoner observation aid (POA)." (*Id.*, PageID.4.)[1] Plaintiff explains that working in this position is "on a volunteer basis," and Plaintiff claims that "any POA worker could accept or decline any POA assignment when called without consequence." (*Id.*)

In December of 2020, ECF was "placed on Covid-19 outbreak status," and "prisoners were subjected to Covid-19 restrictions per state CDC mandates." (*Id.*) Plaintiff states that Units 4 and 5 "were designated as the Covid infected quarantine units." (*Id.*) On December 9, 2020, Plaintiff "was ordered to report" to Unit 4 to "perform POA duties." (*Id.*, PageID.4–5.) Upon arriving at the unit, Plaintiff saw signs advising that "anyone entering the building must wear the proper personal protection equipment (PPE)." (*Id.*, PageID.5.) Plaintiff observed that correctional officers and porters were wearing PPE, including face masks, face shields, latex gloves, hair coverings,

---

[1] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

and smocks. (*Id.*) Plaintiff requested this PPE for himself, and Defendant Unknown Party #1 and several other unnamed officers (not parties) "laughed and made jokes, stating that: 'the PPE gear was to protect them from the Plaintiff and not the other way around.'" (*Id.*) Because Plaintiff was not provided the proper PPE, he "refused to stay on the assignment." (*Id.*) However, Plaintiff "was given a direct order to stay in the quarantined unit without proper protection and watch/observe the intended prisoner or be given a major misconduct" for disobeying a direct order. (*Id.*) "Plaintiff was further threatened" by Defendant Unknown Party #1 when the officer "threatened to place Plaintiff in segregation if he left the unit and refused to do his job." (*Id.*) Plaintiff complied, so that he would avoid segregation. (*Id.*)

The following day, December 10, 2020, Plaintiff was "called again to go back to the same quarantined Covid-infected unit to do POA [work], but refused." (*Id.*) Plaintiff refused this assignment two additional times on December 10, 2020, and after Plaintiff's third refusal, he was told that he would be fired if he "did not report to the POA assignment." (*Id.*) "Plaintiff again refused." (*Id.*)

On December 11, 2020, Defendants Parish, Burgess, and Clouse came to Plaintiff's housing unit, and called a meeting with "Plaintiff and several other POA volunteers." (*Id.*) At the meeting "[t]he administrative staff members questioned why the Plaintiff and other volunteers were refusing to report to their POA assignment[s]." (*Id.*, PageID.6.) "Plaintiff expressed concerns about the health hazards of being forced to work under the severe Covid conditions in a Covid-infected quarantined area without PPE gear." (*Id.*) Defendant Parish told Plaintiff that if Plaintiff "agreed to work," Defendant Parish "would personally assure that Plaintiff and other POA volunteers would receive hazard pay, the required PPE gear and would personally guarantee Plaintiff[']s safety." (*Id.*) Plaintiff refused, "citing fear for his health and life." (*Id.*)

3

Defendant Parish "threatened to fire Plaintiff and told him that he would go on unemployable (OO) status if he continued to refuse to go to the designated POA unit." (*Id.*) Additionally, Defendant Clouse "threatened Plaintiff with segregation for creating a disturbance, citing that Plaintiff was the reason that the other volunteers were refusing to work." (*Id.*) Defendant Burgess told Plaintiff that he "should be in the hole for running his mouth." (*Id.*)

On December 13, 2020, Plaintiff was called to Unit 5, which was a COVD-19 quarantine unit, for a POA assignment. (*Id.*) "Plaintiff was eventually provided with the proper PPE gear," however, "the gear was only provided after Plaintiff entered the infected unit," and was "placed in the shower and strip searched." (*Id.*)

Subsequently, on December 15, 2020, Plaintiff was tested for COVID-19, and on December 18, 2020, his "results came back positive." (*Id.*) On December 19, 2020, Plaintiff was moved to Unit 6, which had recently been designated a COVID-19 quarantine unit. (*Id.*) Upon arriving at the cell in Unit 6, Plaintiff "noticed that the cell had not been cleaned nor sanitized as mandated per departmental office memorandum." (*Id.*) "Plaintiff noticed trash everywhere, dirt and water marks were on the walls and floor from recent flooding, . . . [t]he mattress was soiled with a strong mildew smell," and Plaintiff believed "there was black mold and bugs . . . coming out of the cracks in the wall where water had previously been coming in at." (*Id.*, PageID.7.) Plaintiff told Defendants Bissle and Mulberg, as well as non-party correctional officer Schaffley, about the conditions of the cell. (*Id.*) Defendants Bissle and Mulberg "ignored Plaintiff and refused to provide Plaintiff with cleaning solution, supplies or equipment." (*Id.*) "Plaintiff reiterated his concerns to the two officers," and Defendant Mulberg "stated that Plaintiff wouldn't be in that cell if he wasn't such a problem with the warden." (*Id.*) Subsequently, Defendant Bissle gave Plaintiff "a direct order to either lock in the cell" or go to segregation. (*Id.*) Plaintiff complied with the order

4

and was locked in the cell with another inmate who also had COVID-19. (*Id.*) Plaintiff "verbally expressed his intent to file a grievance," and thereafter he requested grievance forms from Defendants Bissle and Mulberg. (*Id.*)

During Plaintiff's ten-day quarantine period, his COVID-19 symptoms "had gotten progressively worse," however, Plaintiff did not report his symptoms "so he wouldn't be delayed being moved out of [his] cell." (*Id.*, PageID.7–8.) Plaintiff was released from quarantine on December 29, 2020. (*Id.*, PageID.8.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated Plaintiff's Eighth Amendment rights, right to be free from retaliation under the First Amendment, and right to due process under the Fourteenth Amendment. (*Id.*, PageID.8–9.) Plaintiff also avers that Defendants Burgess, Parish, and Clouse violated his rights under state law. (*Id.*, PageID.9.) As relief, Plaintiff seeks a compensatory, punitive, and nominal damages, as well as declaratory relief. (*Id.*, PageID.10–11.)

## II.    Motion for Appointment of Counsel

Plaintiff has filed a motion requesting the appointment of counsel. (ECF No. 3.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these

factors and has determined that, at this time, the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's motion for appointment of counsel (ECF No. 3) therefore will be denied.

### III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

6

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment Claims

Plaintiff alleges that Defendants Unknown Party #1, Parish, Burgess, and Clouse violated his Eighth Amendment rights because he was incarcerated under conditions that put him at risk of contracting COVID-19. Additionally, Plaintiff alleges that Defendants Bissle and Mulberg violated his Eighth Amendment rights when he was housed in an unsanitary and unclean cell.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that Defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80

7

(6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1. Risk of COVID-19 Exposure – Defendants Unknown Party #1, Parish, Burgess & Clouse

#### a. Objective Prong

In this action, Plaintiff contends that he was incarcerated under conditions that put him at risk of contracting COVID-19. (*See generally* Compl., ECF No. 1.)

In a 2020 case brought by federal prisoners under 28 U.S.C. § 2241, the United States Court of Appeals for the Sixth Circuit addressed the issue of whether the Bureau of Prisons (BOP) violated the Eighth Amendment rights of medically vulnerable inmates at the Elkton Federal Correctional Institution by failing to adequately protect them from COVID-19 infection. *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). In the opinion, the Sixth Circuit found that the plaintiffs in *Wilson* had easily satisfied the objective component of an Eighth Amendment claim:

> The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death. The BOP acknowledges that "[t]he health risks posed by COVID-19 are significant." CA6 R. 35, Appellant Br., PageID42. The infection and fatality rates at Elkton have borne out the serious risk of COVID-19, despite the BOP's efforts. The transmissibility of the COVID-19 virus in conjunction with Elkton's dormitory-style housing—which places inmates

8

within feet of each other—and the medically-vulnerable subclass's health risks, presents a substantial risk that petitioners at Elkton will be infected with COVID-19 and have serious health effects as a result, including, and up to, death. Petitioners have put forth sufficient evidence that they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

*Id.* at 840.

Here, Plaintiff alleges conditions that could have facilitated COVID-19 transmission within his prison (*see generally* ECF No. 1), and although Plaintiff does not allege that he suffers from a condition that makes him medically vulnerable, at this early stage of the proceedings, the Court concludes that Plaintiff has alleged facts sufficient to satisfy the objective prong of the deliberate indifference test.

### b.      Subjective Component

In *Wilson*, the Sixth Circuit also addressed the subjective prong of an Eighth Amendment COVID-19-related claim, noting that the pertinent question was whether the BOP's actions demonstrated deliberate indifference to the serious risk of harm posed by COVID-19 in the prison. *See Wilson*, 961 F.3d at 840–41.

### (1)      Defendant Unknown Party #1

With respect to Defendant Unknown Party #1, Plaintiff alleges that on December 9, 2020, Plaintiff "was ordered to report" to Unit 4, which was a COVID-19 quarantine unit, to "perform POA duties." (Compl., ECF No. 1, PageID.4–5.) Upon arriving at the unit, Plaintiff saw signs advising that "anyone entering the building must wear the proper [PPE]." (*Id.*, PageID.5.) Plaintiff observed that correctional officers and porters were wearing PPE, including face masks, face shields, latex gloves, hair coverings, and smocks. (*Id.*) Plaintiff requested this PPE for himself, and Defendant Unknown Party #1 "refused to provide Plaintiff with the required PPE gear when requested." (*Id.*) After Plaintiff was given a direct order to complete his POA assignment in the quarantined unit without PPE, Plaintiff complied. (*Id.*) At this stage of the proceedings, taking

9

Plaintiff's allegations as true and in the light most favorable to him, the Court may not dismiss Plaintiff's Eighth Amendment claim regarding the risk of COVID-19 exposure against Defendant Unknown Party #1, a correctional officer at ECF.

### (2)    Defendants Parish, Burgess, and Clouse

As to Defendants Parish, Burgess, and Clouse, Plaintiff alleges that these Defendants came to his housing unit on December 11, 2020, and held a meeting with Plaintiff and other POA volunteers. (*Id.*) "Plaintiff expressed concerns about the health hazards of being forced to work under the severe Covid conditions in a Covid-infected quarantined area without PPE gear." (*Id.*) Defendant Parish told Plaintiff that if Plaintiff "agreed to work," Defendant Parish "would personally assure that Plaintiff and other POA volunteers would receive hazard pay, the required PPE gear and would personally guarantee Plaintiff[']s safety." (*Id.*) Plaintiff refused, "citing fear for his health and life." (*Id.*) Plaintiff contends that Defendants Parish, Clouse, and Burgess then tried to pressure Plaintiff into agreeing to continue his POA work. (*See id.*)

Although it is clear that Plaintiff did not wish to work as a POA in COVID-19 infected units even if he was provided PPE, Plaintiff's allegations show that during the December 11, 2020, meeting, Defendants Parish, Burgess, and Clouse indicated that Plaintiff would receive proper PPE when he worked as a POA. Plaintiff fails to allege any facts to suggest that Defendants Parish, Burgess, and Clouse knew that Plaintiff had not been provided PPE during his POA shift prior to the December 11, 2020, meeting, at which he informed them of this issue. Indeed, after Plaintiff informed Defendants Parish, Burgess, and Clouse that he had not received proper PPE for his prior POA shift, these Defendants informed Plaintiff that they would ensure that he did have PPE for his POA shifts.

10

Moreover, to the extent that Plaintiff seeks to hold Defendants Parish, Burgess, and Clouse liable for the actions of their subordinates, government officials, such as these Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendants Parish, Burgess, and Clouse encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's conclusory allegation of supervisory responsibility is insufficient to demonstrate that Defendants Parish, Burgess, and Clouse were personally involved in the alleged violations of Plaintiff's Eighth Amendment rights.

### 2. Conditions of Cell – Defendants Bissle & Mulberg

As explained below, with respect to Plaintiff's allegations regarding the cleanliness of his cell in Unit 6, Plaintiff fails to allege sufficient facts to suggest that these deprivations were anything other than temporary inconveniences, and allegations about temporary inconveniences do not show that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal quotation marks omitted)).

In this action, Plaintiff contends that the cell where he was housed in Unit 6 was not "cleaned nor sanitized," had "trash everywhere" and "dirt and water marks . . . on the walls and floor," smelled of mildew, and had what Plaintiff believed to be "black mold" and "bugs." (Compl., ECF No. 1, PageID.6–7.) Plaintiff explains that he was placed in this cell in Unit 6, which was a COVID-19 quarantine unit, on December 19, 2020, following his positive COVID-19 test. (*Id.*, PageID.6.) Plaintiff told Defendants Bissle and Mulberg, as well as non-party correctional officer Schaffley, about the conditions of the cell. (*Id.*) Defendants Bissle and Mulberg "ignored Plaintiff and refused to provide Plaintiff with cleaning solution, supplies or equipment." (*Id.*) "Plaintiff reiterated his concerns to the two officers," and then Defendant Bissle gave Plaintiff "a direct order" to "lock in the cell," so Plaintiff complied. (*Id.*) Plaintiff resided in this cell during his

12

ten-day quarantine period; however, to the extent Plaintiff intended to allege that Defendants Bissle and Mulberg are liable for the conditions of his confinement during the entire ten-day quarantine period, Plaintiff's allegations only show that Defendants Bissle and Mulberg were involved in Plaintiff's initial placement in that cell. Under these circumstances, Plaintiff has failed to allege sufficient facts to show that Defendants Bissle and Mulberg were aware of the conditions of Plaintiff's cell for the entire ten-day quarantine period. And, regardless, Plaintiff fails to allege sufficient facts to show that the conditions of his confinement in Unit 6 were anything other than temporary inconveniences, e.g., being subjected to a flooded cell or deprived of a working toilet, which do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. "[T]hese claims, although not frivolous, fail to state claims upon which relief can be granted." *Dellis*, 257 F.3d at 511; *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal quotation omitted))); *Foster v. Ohio*, No. 1:16-cv-920, 2018 WL 6726965, at *14 (S.D. Ohio Dec. 21, 2018) (recognizing that "the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while *substantial* deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration" (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (emphasis in original))). *But see Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (concluding that a prisoner who alleged that he was placed in "shockingly unsanitary" cells for six days, one of which was covered in "massive amounts" of feces and the other of which was equipped with only a clogged drain to dispose of bodily waste, stated a violation of the Eighth Amendment); *Taylor v. Larson*, 505 F. App'x 475, 477 (6th Cir. 2012) (concluding that a prisoner

13

who alleged that he was forced to remain in a cell covered in fecal matter for three days stated a claim under the Eighth Amendment).

Accordingly, for these reasons, Plaintiff fails to state an Eighth Amendment conditions of confinement claim against Defendants Bissle and Mulberg. Plaintiff's Eighth Amendment claims against Defendants Bissle and Mulberg will be dismissed.

### B. First Amendment Retaliation Claims

Plaintiff contends that Defendants retaliated against him in violation of his First Amendment rights.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### 1. Defendants Bissle & Mulberg

As to Defendants Bissle and Mulberg, as explained below, Plaintiff's First Amendment retaliation claims against these Defendants will be dismissed.

With respect to the first element of a retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the

14

anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Here, Plaintiff references making oral grievances, as well as requesting grievance forms to file written grievances. Because the filing of non-frivolous grievances and complaints constitutes protected activity, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has stated the first element of a retaliation claim.

With regard to the second element, the adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Here, Plaintiff contends that after he tested positive for COVID-19, he was moved to Unit 6, which was designated as a COVID-19 quarantine unit. (Compl., ECF No. 1, PageID.6.) Plaintiff contends that Defendants Bissle and Mulberg "ignored" Plaintiff's concerns regarding the conditions of his cell in Unit 6 and "refused to provide Plaintiff with cleaning solution, supplies or equipment." (*Id.*, PageID.7.) Plaintiff also alleges that Defendant Bissle "refused to move the Plaintiff to another cell," and that Defendant Bissle stated, "I don't care[;] I know what the cell looks like." (*Id.*) Further, Plaintiff alleges that Defendant Bissle gave Plaintiff "a direct order to either go lock in the cell or go to the 5 block (segregation and Covid infected quarantined unit)." (*Id.*)

Ordinarily, transfers to the general population of another prison or transfers within general population in a single prison are not an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). However, in *Hill v. Lappin*, 630 F.3d 468, 474–75 (6th Cir. 2010), the Sixth Circuit held that transfer to administrative segregation or another prison's lockdown unit can be sufficient to constitute adverse action. As such, Defendant Bissle's order to

15

Plaintiff to lock in the cell in Unit 6 or be transferred to the quarantine unit in segregation can be viewed as an adverse action.

In contrast, with respect to Plaintiff's transfer to Unit 6, a non-segregation quarantine unit, after he tested positive for COVID-19, although Plaintiff believed that his cell in Unit 6 required additional cleaning and sanitizing and he alleges that his requests to clean and sanitize the cell were denied, as discussed above, Plaintiff has failed to allege sufficient facts to show that the conditions of his cell were anything other than temporary inconveniences. *See supra* Part III.A.2; (Compl., ECF No. 1, PageID.6.) Under the circumstances alleged by Plaintiff, Plaintiff's placement in Unit 6 did not constitute an adverse action. *See, e.g.*, *Burgos v. Canino*, 358 F. App'x 302, 307 (3d Cir. 2009) (discussing that in "an emergency situation within the prison," the defendant's refusal to provide the prisoner-plaintiff with "cleaning supplies or to restore running water to his cell after his cell block flooded" resulted in "temporary inconveniences" that "did not amount to retaliation").

Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. Here, Plaintiff contends that after he "reiterated his concerns" regarding the condition of his cell in Unit 6 to Defendants Bissle and Mulberg, Defendant Mulberg "stated that Plaintiff wouldn't be in that cell if he wasn't such a problem with the warden." (Compl., ECF No. 1, PageID.7.) Although Plaintiff alleges that Defendant Mulberg referenced that Plaintiff had "a problem with the warden," Plaintiff fails to provide any further explanation about this statement. Based on the lack of facts alleged by Plaintiff, he has failed to show that Defendant Mulberg's reference to "a problem with the warden" was a reference to any of Plaintiff's protected conduct. Therefore, Defendant Mulberg's statement, on its own with no further explanation, is insufficient to show that

16

Defendants Bissle and Mulberg were motivated by any protected conduct. Instead, Plaintiff merely alleges the ultimate fact of retaliation; however, he alleges insufficient facts from which to reasonably infer that Defendants Bissle and Mulberg were motivated by any protected conduct. *See Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, because Plaintiff fails to allege sufficient facts to suggest that Defendants Bissle and Mulberg were motivated by Plaintiff's protected conduct, Plaintiff fails to state a First Amendment retaliation claim against them.

### 2. Defendants Unknown Party #1, Parish, Burgess & Clouse

Although Plaintiff has by no means proven retaliation, viewing the allegations in the complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff's First Amendment retaliation claims against Defendants Unknown Party #1, Parish, Burgess, and Clouse may not be dismissed on initial review.

### C. Fourteenth Amendment Due Process Claims

Plaintiff contends that Defendants' actions "shock[ed] the conscience." (Compl., ECF No. 1, PageID.8–9.) To the extent that Plaintiff intended to raise a substantive due process claim regarding the actions of Defendants, as explained below, he fails to state such a claim.

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739,

17

746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Eighth Amendments apply to protect Plaintiff's right to be free from retaliation and right to be free from cruel and unusual punishment. *See supra* Part II.A–B. Furthermore, nothing in the complaint suggests that Defendants engaged in the sort of egregious conduct that would support a substantive due process claim. Consequently, any intended substantive due process claim will be dismissed.

### D. State Law Claims

Plaintiff contends that Defendants Parish, Burgess, and Clouse "were negligent." (Compl., ECF No. 1, PageID.9.)

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60

F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants Parish, Burgess, and Clouse violated state law fail to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Because Plaintiff continues to have pending federal claims against Defendants Parish, Burgess, and Clouse, the Court will exercise supplemental jurisdiction over his state law claims against these Defendants.

## Conclusion

Plaintiff's motion for the appointment of counsel (ECF No. 3) will be denied. Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Bissle and Mulberg will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's Eighth Amendment claims against Defendants Parish, Burgess, and Clouse; and Plaintiff's Fourteenth Amendment substantive due process claims against Defendants Parish, Burgess, Clouse, and Unknown Party #1. The following claims remain in the case: Plaintiff's Eighth Amendment claim against Defendant Unknown Party #1; Plaintiff's First Amendment retaliation claims against

Defendants Parish, Burgess, Clouse, and Unknown Party #1; and Plaintiff's state law claims against Defendants Parish, Burgess, and Clouse.

An order consistent with this opinion will be entered.


Dated:   February 6, 2023               /s/ Jane M. Beckering
                                        Jane M. Beckering
                                        United States District Judge